OPINION
Barbara J. Aunspaw ("Mrs. Aunspaw") appeals from a judgment of the Montgomery County Court of Common Pleas, which concluded that Mrs. Aunspaw had no interest in a piece of property owned by her deceased former husband.
Mrs. Aunspaw married Paul Aunspaw ("Mr. Aunspaw") in 1960. The couple purchased two properties during their marriage, a house located at 3655 Elderberry Avenue ("the Dayton property") and a house located in Preble County ("the lake property"). In 1982, they obtained a dissolution of their marriage. Their separation agreement originally provided for the sale of both properties and a division of the proceeds. However, the agreement was subsequently amended to read as follows:
 "The Husband shall retain both properties and the Wife will convey all of her interest in said properties to him by Quit Claim Deed. The Husband assumes and agrees to pay the mortgage on the Dayton property with a balance of approximately $17,000.00 and he shall be responsible for all taxes, insurance and other maintenance expenses in connection with that property. The Wife will continue to occupy that property as a residence for as long as she wishes, but in the event of remarriage, she agrees to vacate the property." Several months prior to their dissolution, Mr. Aunspaw executed a will, in which he left both properties to Mrs. Aunspaw and stated that the will would survive the dissolution of the marriage.
Following the dissolution, the parties did not adopt the living arrangements set forth in the amended separation agreement. Mrs. Aunspaw lived in the Dayton property for a short period of time in 1982, but she left because Mr. Aunspaw refused to move out and because, according to her testimony, he raped her. She lived in an apartment for approximately two years and then moved into the lake property, where she resided until 1996. Mr. Aunspaw lived in the Dayton property from the dissolution of his marriage in 1982 until his death in 1997. He became involved romantically with Jean Whittington, who lived with him sporadically from 1983 until 1996. The two married in 1990 and were divorced in 1992.
Mr. Aunspaw became seriously ill in late 1996. At that time, Ms. Whittington had moved out of the Dayton property, and Mrs. Aunspaw moved back into the Dayton property to care for Mr. Aunspaw. On November 14, 1996, Mr. Aunspaw executed a codicil to his will, leaving the Dayton property to Ms. Whittington. He also executed a deed transferring his interest in that property to Ms. Whittington.
Mr. Aunspaw died in April of 1997. Following his death, Mrs. Aunspaw filed his 1982 will for probate and was named executrix. Ms. Whittington then filed his 1996 codicil for probate. Mrs. Aunspaw was subsequently removed as executrix, and Harry Beyoglides was appointed as administrator of Mr. Aunspaw's estate. On behalf of the estate, Mr. Beyoglides filed a motion to have Mrs. Aunspaw held in contempt of the separation agreement for failing to quit claim her interest in the Dayton and lake properties. The domestic relations court found her in contempt and ordered her to quit claim her interest within five days. She did not do so. The domestic relations court then transferred her interest to the estate by court order. In that action, Mr. Beyoglides and Mrs. Aunspaw stipulated that the separation agreement gave Mrs. Aunspaw a life estate in the Dayton property.
On November 7, 2000, Mrs. Aunspaw filed a complaint for declaratory judgment that she held a life estate in the Dayton property. On November 17, 2000, Ms. Whittington filed a complaint for declaratory judgment that Mrs. Aunspaw did not hold a life estate in the Dayton property. Ms. Whittington argued alternatively that, if the separation agreement had given Mrs. Aunspaw a life estate, she had forfeited it by abandonment and waste. These two cases were consolidated, and a bench trial was held on October 11, 2001. On October 22, 2001, the trial court issued its decision, concluding that Mrs. Aunspaw did not have a life estate in the Dayton property, but instead had a license.
Mrs. Aunspaw appeals, raising one assignment of error:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT IN FINDING THAT A LICENSE TO OCCUPY THE DAYTON PROPERTY WAS GRANTED TO PLAINTIFF-APPELLANT, INSTEAD OF A LIFE ESTATE, IN DIRECT CONTRAVENTION OF THE PLAIN LANGUAGE OF THE AMENDMENT TO THE SEPARATION AGREEMENT BETWEEN PAUL AUNSPAW AND PLAINTIFF-APPELLANT."
Essentially, Mrs. Aunspaw argues that the trial court erred in concluding that the separation agreement did not create a life estate.
We are primarily concerned with the following language from the amended separation agreement: "The Wife will continue to occupy that property as a residence for as long as she wishes, but in the event of remarriage, she agrees to vacate the property." In concluding that this language did not create a life estate, the trial court reasoned that it contained "no terms to connote that the parties meant for the interest to be a life estate" and that it did not give Mrs. Aunspaw exclusive use of the property. The court concluded that the separation agreement gave Mrs. Aunspaw a license coupled with a right. It further concluded that Mrs. Aunspaw had relinquished her license by abandonment.
We agree with the trial court that the amended separation agreement did not give Mrs. Aunspaw a life estate. Initially, we note that the agreement did not accomplish any transfer of the property. It provided that Mr. Aunspaw was to receive the property; however, the property was actually transferred to Mr. Aunspaw's estate by court order when Mrs. Aunspaw failed to quit claim her interest as provided by the agreement. Furthermore, the agreement did not give Mrs. Aunspaw ownership of the home for any period of time, but merely the right to live in the home as long as she wished or until she remarried. The agreement also did not reference the term of anyone's life. We do not believe that this language created a life estate in favor of Mrs. Aunspaw. Cf. Loose v. Loose (P.C. 1945), 30 O.O. 333, 334 (holding that language in a will giving the beneficiary "privilege of residence on my lands and in my home until such time as she is disposed to vacate same" did not create a life estate).
However, we believe that the agreement gave Mrs. Aunspaw more than a mere license. Mrs. Aunspaw's right to live in the Dayton property for as long as she wished was part of the property settlement that Mr. and Mrs. Aunspaw agreed upon and that was incorporated into the Decree of Dissolution of Marriage. Just as the parties divided up household goods and automobiles, they divided up their real estate. Mr. Aunspaw received the Dayton property and the lake property. Mrs. Aunspaw received the right to live in the Dayton property. Thus, while Mrs. Aunspaw did not receive a life estate in the property, we believe that she received an equitable right to live there. Cf. Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, 133, 509 N.E.2d 411 (holding that, where a separation agreement provides that an ex-husband is to maintain life insurance listing his ex-wife as the beneficiary and the ex-husband changes the beneficiary, the ex-wife has an equitable right to the proceeds of the insurance policy and the new beneficiary holds the proceeds in a constructive trust for the ex-wife). Mr. Aunspaw could not terminate her right by giving his interest in the property to Ms. Whittington by will or deed.
We also do not believe that Mrs. Aunspaw terminated her interest by abandonment. The separation agreement gave her the right to live in the property "as long as she wishe[d]." Mrs. Aunspaw testified that she had moved out because Mr. Aunspaw had raped her and she had feared for her safety. At the very least, it is clear that Mr. Aunspaw refused to vacate the Dayton property. Thus, Mrs. Aunspaw's leaving the home does not indicate that she no longer wished to live there, simply that she no longer wished to live with Mr. Aunspaw. In fact, Mrs. Aunspaw testified that she still wished to live in the Dayton property. Thus, we conclude that Mrs. Aunspaw did not terminate her equitable right to live in the property by living elsewhere for fourteen years. Mr. Aunspaw could give Ms. Whittington his interest in the property, but it continues to be subject to Mrs. Aunspaw's right to live there.
We therefore conclude that the trial court was correct in deciding that the separation agreement did not give Mrs. Aunspaw a life estate in the property but that the court erred in concluding that Mrs. Aunspaw had a license that had been terminated by abandonment.
Mrs. Aunspaw's assignment of error is sustained.
The judgment will be reversed and remanded to the trial court for further proceedings consistent with this opinion.
FAIN, J. and GRADY, J., concur.